# In the United States Court of Federal Claims

No. 19-48C

(E-Filed: December 9, 2020)

|  |  |  |
|---|---|---|
| ELEAZAR AVALOS, et al., | ) ) ) | Motion to Dismiss; RCFC 12(b)(6); Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19; Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42; Government Employees Fair Treatment Act of 2019 (GEFTA); Pub. L. No. 116-1, 133 Stat. 3 (2019); 28 U.S.C. § 1500. |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) |

Gregory James O'Duden, Washington, DC, for plaintiff. Julie M. Wilson, Allison C. Giles, Leon Dayan, Abigail Carter, of counsel.

Erin K. Murdock-Park, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Ann C. Motto, of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Judge.

Plaintiffs in this putative collective action allege that the government, through several agencies, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, by failing to timely pay their earned overtime and regular wages during the partial government shutdown and lapse of appropriations that began on December 22, 2018. See ECF No. 6 (amended complaint, hereinafter referred to as the complaint). On May 3, 2019, defendant moved to dismiss the complaint for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC); and in the alternative, for failure to state a claim on which relief may be granted, pursuant to RCFC 12(b)(6) on the basis that the Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42, prohibited the government from paying employees. See ECF No. 21.

In analyzing defendant's motion, the court has considered: (1) plaintiffs' complaint, ECF No. 6; (2) defendant's motion to dismiss, ECF No. 21; (3) plaintiffs' response to defendant's motion, ECF No. 22; (4) defendant's reply in support of its motion, ECF No. 26; (5) defendant's first supplemental brief in support of its motion, ECF No. 28; (6) plaintiffs' response to defendant's first supplemental brief, ECF No. 29; (7) defendant's second supplemental brief in support of its motion, ECF No. 37; (8) plaintiffs' response to defendant's second supplemental brief, ECF No. 41; (9) defendant's third supplemental brief in support of its motion, ECF No. 45; and (10) plaintiffs' response to defendant's third supplemental brief, ECF No. 46. The motion is now fully briefed and ripe for ruling.[1] The court has considered all of the arguments presented by the parties, and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, defendant's motion is **DENIED**.

I.   Background

Beginning at 12:01 a.m. on December 22, 2018, the federal government partially shut down due to a lack of appropriations. See ECF No. 6 at 6. The named plaintiffs in this case were, at the time of the shutdown, employed as Customs and Border Protection Officers for the United States Department of Homeland Security, Customs and Board Protection (CBP). See id. at 3. Plaintiffs allege that CBP "classified them as FLSA nonexempt," and that they "were designated excepted employees [under the ADA] for the shutdown that began on December 22[, 2018]." Id. at 3, 6. As a result of being classified as exempt employees, plaintiffs were required to work during the shutdown, but did not receive timely pay for that work. See id. at 6-8 (alleging facts specific to each named plaintiff).

Plaintiffs allege that "[t]he federal government's failure to pay timely [p]laintiffs and other FLSA nonexempt employees who performed overtime work [during the shutdown], or who performed non-overtime work [during the shutdown] violated the

---

[1]   In one of its supplemental briefs, defendant suggests that a recent decision issued by the Supreme Court of the United States, Maine Community Health Options v. United States, 140 S. Ct. 1308 (2020), a case that does not involve FLSA claims, indicates that this court lacks jurisdiction to hear this case because the FLSA "contains its own provision for judicial review." ECF No. 45 at 2. In the same brief, defendant acknowledges binding precedent from the United States Court of Appeals for the Federal Circuit to the contrary. See id. (citing Abbey v. United States, 745 F.3d 1363 (Fed. Cir. 2014)). The court will not review this entirely new basis for dismissal, which was argued for the first time in defendant's third supplemental brief, and which defendant acknowledges contradicts binding precedent. If defendant believes this court lacks jurisdiction to continue exercising its authority in this case under the authority of Maine Community Health, it may file a motion properly raising the issue. See Rule 12(h)(3) of the Rules of the United States Court of Federal Claims (RCFC) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

FLSA." Id. 8.  And according to plaintiffs, "[t]he federal government was on notice, including from previous litigation, that a failure to pay FLSA nonexempt employees their overtime wages on time, or the required minimum wage on time, regardless of whether the government is shut down, is a per se FLSA violation." Id. at 8-9.  In support of this allegation, plaintiffs cite to this court's ruling in Martin v. United States, 130 Fed. Cl. 578 (2017), in which the court found "that the federal government failed to ascertain its FLSA obligations in connection with the payment of FLSA nonexempt employees who were required to work during a government shutdown." Id. at 9.  Plaintiffs claim that defendant likewise failed to "obtain such an opinion or analysis about its FLSA obligations" during the shutdown at issue here. Id.  As a result, plaintiffs contend, defendant "neither acted in good faith, nor had reasonable grounds for believing that failing to pay FLSA nonexempt employees their overtime wages or the required minimum wage on time during the shutdown was compliant with the FLSA." Id.

Plaintiffs define the putative class to include "FLSA nonexempt employees in bargaining units represented by [the National Treasury Employees Union (NTEU)]" during the shutdown. Id. at 4.  The NTEU allegedly represents "[h]undreds of thousands of federal employees, including tens of thousands of employees in bargaining units," who "were forced to work during the partial government shutdown without pay." Id. at 1-2.  Notably, however, the NTEU is not a named plaintiff in the amended complaint. See id. at 1.

Plaintiffs now seek "any overtime wages . . . and any minimum wage" earned during the shutdown, "liquidated damages in an amount equal to" those wages, and "reasonable attorneys' fees and costs incurred in this action." Id. at 14-15.

II.     Legal Standards

   A.     Dismissal for Lack of Jurisdiction

Pursuant to the Tucker Act, the court has jurisdiction to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  To invoke the court's jurisdiction, plaintiffs must show that their claims are based upon the Constitution, a statute, or a regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (quoting United States v. Testan, 424 U.S. 392, 400 (1976)).

Plaintiffs bear the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  In reviewing plaintiffs' allegations in support of

jurisdiction, the court must presume all undisputed facts are true and construe all reasonable inferences in plaintiffs' favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982); Reynolds, 846 F.2d at 747 (citations omitted). If, however, a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute." Reynolds, 846 F.2d at 747. If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint. See RCFC 12(h)(3).

      B.      Dismissal for Failure to State a Claim

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.     Analysis

      A.      The Court Has Jurisdiction over Plaintiffs' Claims

At the end of its motion to dismiss, defendant includes a short argument in which it takes the position that the court lacks jurisdiction to hear plaintiffs' claims pursuant to 28 U.S.C. § 1500. See ECF No. 21 at 24-26. Section 1500 states, in its entirety, as follows:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. Of relevance here, the Court of Appeals for the Federal Circuit has held that the "question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994).

4

According to defendant, "Section 1500 bars plaintiffs from pursuing claims in this case in the Court of Federal Claims because another claim in district court based on the same operative facts was pending on the date they filed their complaint in this Court." ECF No. 21 at 24. Defendant argues that plaintiffs' claims are "based upon the same set of operative facts" as the claims asserted in National Treasury Employees Union v. United States, Case No. 19-cv-50 (D.D.C. 2019), which was filed in the United States District Court for the District of Columbia on January 11, 2019, the same day the present action was filed. Id. at 25. Defendant explains that the NTEU "filed its suit in district court on behalf of itself and its members who were required to report to work as 'excepted employees' during the lapse in appropriations." Id. (citations omitted). Given the symmetry of claims and the fact that the district court case was "filed on the same day as this case," defendant argues, this court must dismiss the present action. Id.

As plaintiffs note in response, however, defendant's analysis elides a critical piece of the statutory text. See ECF No. 22 at 27-29. Section 1500 operates only when the same "plaintiff or his assignee" is involved with the two similar cases. 28 U.S.C. § 1500. As the Supreme Court of the United States has explained: "[Section 1500] is more straightforward than its complex wording suggests. The [Court of Federal Claims] has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." United States v. Tohono O'Odham Nation, 563 U.S. 307, 311 (2011) (emphasis added).

Here, according to plaintiffs, the parties are not the same because "[t]he plaintiffs in Avalos are individual employees and the plaintiff in NTEU v. U[nited] S[tates] is a labor union." ECF No. 22 at 27. In addition, "[n]one of the plaintiffs is an assignee of the other." Id. "Section 1500 is therefore inapplicable." Id. Defendant has offered no evidence to the contrary, but argues in its reply that the court should deem plaintiffs in the two cases to be the same for purpose of applying § 1500:

> The National Treasury Employees Union in NTEU seeks to represent all of its members, while plaintiffs in this case, four individual members of the NTEU, seek to also represent all similarly situated members of the NTEU. According to their website, the NTEU represents federal employees in 33 different agencies, including CBP. In other words, plaintiffs in this case are encompassed by the first-filed district court action. Plaintiffs in both lawsuits are only different in title; they are identical in substance.

ECF No. 26 at 21 (footnote omitted). In support of this position, defendant cites to Allensworth v. United States, 122 Fed. Cl. 45 (2015), and O'Connor v. United States, 308 F.3d 1233 (Fed. Cir. 2002), cases in which the courts concluded that individual members of labor unions were bound by various aspects of settlement agreements negotiated by unions on behalf of their members. Neither of these cases, however, involve the application of § 1500. This authority does not compel the court to find that

5

the NTEU's lawsuit precludes the individually named plaintiffs in this case from maintaining suit in this court, and defendant's argument fails to make a persuasive connection between § 1500 and the referenced cases.

Additional facts may be discovered, or argument made, in the course of this litigation that affect the analysis, but at this stage the court is unconvinced that § 1500 applies.  In particular, the court notes the lack of discussion by the parties of the interplay between § 1500 and this court's exclusive jurisdiction over FLSA claims against the federal government that exceed $10,000.  See Abbey v. United States, 745 F.3d 1363, 1368-69 (Fed. Cir. 2014).

Moreover, even assuming an identity of plaintiffs between this case and the district court case, the presently available evidence indicates that plaintiffs filed here first.  The case management/electronic case filing (CM/ECF) system docket in this case states that the complaint was "entered on 1/10/2019 at 3:54 PM EST and filed on 1/9/2019."  ECF No. 22 at 41.  The CM/ECF docket in the district court case states that the complaint was "entered by Shah, Paras on 1/9/2019 at 3:28 PM EST and filed on 1/9/2019."  Id. at 46.  Plaintiffs' attached to their response, a declaration from Paras Shah, the attorney who filed both cases.  See id. at 36-37.  The declaration outlines the filing process for each complaint, as follows:

> 1. My name is Paras N. Shah. I am an Assistant Counsel in the Office of General Counsel of the National Treasury Employees Union (NTEU).  I have held this position since July 19, 2011.  As part of my duties, I have drafted and filed numerous complaints in various federal courts.
>
> 2. As part of my duties, I filed the complaints in Avalos, et al. v. United States, 19-cv-48 (Fed. CL Jan. 9, 2019) and NTEU v. United States, 19-cv-50 (D.D.C. Jan. 9, 2019).
>
> 3. I logged into the U.S. Court of Federal Claims' Case Management/Electronic Case Files (CM/ECF) system on January 9, 2019 in order to file electronically the Avalos complaint in the Court of Federal Claims.  I filed the complaint in Avalos at, or within a few minutes prior to, 2:56 p.m. on January 9, 2019.
>
> 4. As part of filing the Avalos complaint, I paid the required filing fee. I received notification from pay.gov promptly after filing the Avalos complaint at 2:56 p.m. on January 9, 2019.  A true and correct copy of the pay.gov confirmation that I received (except that the last four digits of the credit card number are redacted) for the filing fee in Avalos is attached as Exhibit A to this Declaration.

> 5. The ECF notice for <u>Avalos</u> was sent to our office on January 10. That ECF notice states that the complaint was "filed on 1/9/2019" and the complaint itself has "Filed 01/09/19" on it. <u>Avalos</u>, (Dkt. #1). A true and correct copy of the ECF notice for the <u>Avalos</u> complaint is attached as Exhibit B to this Declaration.
>
> 6. After I filed the Avalos suit in the Court of Federal Claims, I subsequently logged into the CM/ECF system of the U.S. District Court for the District of Columbia. I filed the <u>NTEU v. U.S.</u> complaint in U.S. District Court at, or within a few minutes prior to, 3:27 p.m. on January 9, 2019. I also paid the required filing fee. I received notification from pay.gov promptly after filing at 3:27 p.m. on January 9, 2019. A true and correct copy of the pay.gov payment confirmation that I received (except that the last four digits of the credit card number, which is redacted) for the filing fee in <u>NTEU v. U.S.</u> is attached as Exhibit C to this Declaration.

<u>Id.</u>

Pursuant to this court's rules, "[i]nitial papers, including the complaint, may be filed in paper or electronic form." RCFC, Appendix E, ¶ 8(a). When a new complaint is electronically filed in this court, as it was in this case, the initial filing is recorded in the court's case CM/ECF system under a place-holder case number, or shell case. Once the filing has been uploaded, the system prompts payment of the filing fee. And after the filing fee has been paid, the system prompts the filer to submit the complaint. The complaint is deemed filed at the time of this submission. This procedure is explained in detail in the "Attorney Guide for Filing Complaints & Petitions in CM/ECF," found on the court's website at www.uscfc.uscourts.gov/electronic-filing.[2]

After the case is filed under a shell case number, the clerk's office assigns the case a permanent case number and creates the formal electronic docket, on which it enters the complaint. This two-step process accounts for the explanation on the docket in this case that was "entered on 1/10/2019 at 3:54 PM EST and filed on 1/9/2019." <u>Id.</u> at 41. Accordingly, in this case, the time stamp indicating that the complaint was "entered on 1/10/2019 at 3:54 PM EST," does not represent the time that the complaint was filed.

The documentation attached to Paras Shah's declaration supports the assertion that the complaint in this case was filed "at, or within a few minutes prior to, 2:56 p.m. on

---

[2] The version of the filing guide that is presently on the court's website was updated in November 2020, but the court has confirmed that the only substantive revision from the version that was on the website when this case was filed was to the amount of the filing fee.

January 9, 2019." Id. at 36, 39.  The email receipt for the filing fee, which bears a tracking number that matches the number stamped on the original complaint, states that it was sent on "Wednesday, January 9, 2019 at 2:56 PM."  Id. at 39; see also ECF No. 1 (complaint).  The court has also confirmed that its internal records for the shell case created when this case was filed reflect the same filing time.  Thus, based both on plaintiffs' evidence and the court's internal records, plaintiffs' complaint in this case was filed on January 9, 2019 at 2:56 p.m., eastern time.

The only evidence of the filing time for the district court case that is before the court indicates that the district court complaint was "entered by Shah, Paras on 1/9/2019 at 3:28 PM EDT and filed on 1/9/2019," and that the filing fee was paid at 3:27 PM on the same date.  Id. at 44, 46.  The court has no insight into the internal processes of the district court, and will not speculate about what they might be.  Further investigation may reveal that the complaint was filed before the time reflected on the district court docket, but the evidence before the court at this time indicates that the district court case was not pending at the time that plaintiffs filed in this court.  See Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994) (holding that the "question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action"); Parker v. United States, 131 Fed. Cl. 1, 19 n.22 (2017) (noting that the "majority view recognizes as dispositive the sequence of the two complaints' filings" in determining whether § 1500 operates to abrogate this court's jurisdiction).  Accordingly, the court would further decline to apply § 1500 based on the order in which it appears the cases were filed.

       B.      Plaintiffs Have Stated a Claim on which Relief Can Be Granted

            1.      Relevant Statutes

This case fundamentally concerns the intersection of two statutes, the ADA and the FLSA.  The ADA states that "an officer or employee" of the federal government "may not . . . make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation."  31 U.S.C. § 1341(a)(1)(A).  In addition, the ADA dictates that "[a]n officer or employee of the United States Government or of the District of Columbia government may not accept voluntary services for either government or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property."  31 U.S.C. § 1342.  In 2019, Congress amended the ADA, adding, in relevant part, the following:

> [E]ach excepted employee who is required to perform work during a covered lapse in appropriations[3] shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse.

31 U.S.C. § 1341(c)(2) (footnote added). The amendment is commonly referred to as the Government Employees Fair Treatment Act of 2019 (GEFTA), Pub. L. No. 116-1, 133 Stat. 3 (2019). The knowing or willful violation of the ADA is punishable by a fine of "not more than $5,000" or imprisonment "for not more than 2 years, or both." 31 U.S.C. § 1350. And federal employees who violate the ADA "shall be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office." 31 U.S.C. § 1349(a).

Defendant separately has obligations to its employees pursuant to the FLSA, which governs minimum wage and overtime wage compensation for certain employees.[4] See 29 U.S.C. § 213 (identifying categories of exempt employees). The FLSA requires that the government "pay to each of [its] employees" a minimum wage. 29 U.S.C. § 206(a). Pursuant to the FLSA, the government also must compensate employees for hours worked in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). Although the text of the statute does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993). If an employer violates the FLSA's pay provisions, the employer is "liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The employer may also be liable "in an additional equal amount as liquidated damages," id., unless "the employer shows to the satisfaction of the court that the act or omission . . . was in good faith, and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260.

---

3   The statute defines "covered lapse in appropriations" to mean "any lapse in appropriations that begins on or after December 22, 2018." 31 U.S.C. § 1341(c)(1)(A).

4   The FLSA initially applied only to the private sector when enacted in 1938, but was amended to cover public employees in 1974. See Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55 (1974).

9

### 2. The Court's Reasoning in Martin Applies

In its motion to dismiss, defendant first argues that plaintiffs' complaint should be dismissed for failure to state a claim because the agencies for which appropriations lapsed on December 22, 2018, were prohibited by the ADA from paying their employees—even excepted employees who were required to work. See ECF No. 21 at 14-15. This mandate, in defendant's view, means that defendant cannot be held liable for violating its obligations under the FLSA. See id. Defendant argues:

> When Congress criminalized payments during an appropriations lapse, it plainly precluded payments on the schedule plaintiffs assert is required by the FLSA. Federal officials who comply with that criminal prohibition do not violate the FLSA, and Congress did not create a scheme under which compliance with the [ADA] would result in additional compensation as damages to federal employees.

Id. at 14.

The court has previously ruled on the intersection of the ADA and the FLSA in the context of a lapse in appropriations. See Martin, 130 Fed. Cl. 578. In Martin, plaintiffs were "current or former government employees who allege[d] that they were not timely compensated for work performed during the shutdown, in violation of the [FLSA]." Id. at 580 (citing 29 U.S.C. § 201 et seq.). The plaintiffs in Martin alleged the right to liquidated damages with regard to both the government's failure to timely pay minimum wages and its failure to pay overtime wages. See id. In its motion for summary judgment, the government argued that "it should avoid liability under the FLSA for its failure to [pay plaintiffs on their regularly scheduled pay days during the shutdown] because it was barred from making such payments pursuant to the ADA." See id. at 582. The government summarized its argument in Martin as follows:

> The FLSA and the Anti-Deficiency Act appear to impose two conflicting obligations upon Federal agencies: the FLSA mandates that the agencies "shall pay to each of [its] employees" a minimum wage, 29 U.S.C. § 206(a) (emphasis added), which has been interpreted by the courts to include a requirement that the minimum wage be paid on the employees' next regularly scheduled pay day, see Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 n.20 [65 S. Ct. 895, 89 L. Ed. 1296] (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993), and the [ADA] mandates that "[a]n officer or employee of the United States Government . . . may not . . . make or authorize an expenditure . . . exceeding an amount available in an appropriation or fund for the expenditure . . . ." 31 U.S.C. § 1341(A)(1)(A) (emphasis added). Thus, when Federal agencies are faced with a lapse in appropriations and

10

cannot pay excepted employees on their next regularly scheduled payday, the question arises of which statutory mandate controls.

Id. at 582-83 (quoting defendant's motion for summary judgment) (alterations in original).

After reviewing applicable precedent and persuasive authority, the court concluded that "the issue is more complex than simply a choice between whether the FLSA or the ADA controls." Id. at 583. In the court's view:

> the appropriate way to reconcile the [ADA and the FLSA] is not to cancel defendant's obligation to pay its employees in accordance with the manner in which the FLSA is commonly applied. Rather, the court would require that defendant demonstrate a good faith belief, based on reasonable grounds, that its actions were appropriate. As such, the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages.

Id. at 584.

The court noted that plaintiffs' claims survived a motion to dismiss because they had "alleged that defendant had failed to pay wages" on plaintiffs' "next regularly scheduled payday." Id. at 584. On summary judgment, the court concluded that plaintiffs had proven this claim. See id. The court then concluded that the evidence supported an award of liquidated damages because the government failed to satisfy the court that it acted in good faith and on reasonable grounds when it failed to make the payments required under the FLSA.[5] See id. at 585-86.

Both parties acknowledge that the plaintiffs in Martin were "situated similarly to plaintiffs here." ECF No. 21 at 15 (defendant's motion to dismiss); see also ECF No. 6 at 5, 9-10 (plaintiffs citing Martin in their complaint); ECF No. 22 at 15 (plaintiffs noting that defendant makes the "same argument" here as it did in Martin with regard to the intersection of the FLSA and the ADA). In addition, plaintiffs here, like the plaintiffs in Martin, have alleged that defendant's violations of the FLSA were not in good faith. See ECF No. 6 at 9 (alleging that defendant "neither acted in good faith, nor had reasonable

---

[5] In Martin, the defendant also argued that it should avoid liability for liquidated damages with regard to overtime wages due to its inability to calculate the correct amounts due. See Martin v. United States, 130 Fed. Cl. 578, 586-87 (2017). This argument was based on a bulletin from the Department of Labor, and involves an issue that has not been raised in the present case. The absence of this argument, however, has no bearing on the application of the court's reasoning in Martin with regard to the structure of the proper analysis in this case.

11

grounds for believing that failing to pay FLSA nonexempt employees their overtime wages or the required minimum wage on time during the shutdown was compliant with the FLSA").

In its motion to dismiss, defendant does not dispute plaintiffs' allegations that they were required to work during the shutdown, or that the plaintiffs were not paid during that time due to the lapse in appropriations. See ECF No. 21. With regard to the sufficiency of plaintiffs' allegations, defendant characterizes the issue now before the court as "whether plaintiffs have stated a claim for liquidated damages under the [FLSA] notwithstanding the provisions of the [ADA]." Id. at 8. In arguing its position, defendant reiterates the arguments advanced in Martin, but does not present any meaningful distinction between the posture of the Martin plaintiffs and the plaintiffs here. Instead, it acknowledges that "[t]his Court in Martin v. United States concluded that plaintiffs situated similarly to plaintiffs here could recover liquidated damages under the FLSA," but states that it "respectfully disagree[s] with that holding." Id. at 15.

Notwithstanding defendant's disagreement, the court continues to believe that the framework it set out in Martin is appropriate and applies here.[6] As it did in Martin, "the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages."[7] Martin, 130 Fed. Cl. at

---

[6] Defendant also argues that its obligations under the FLSA are limited by the ADA because "a congressional payment instruction to an agency must be read in light of the [ADA]." ECF No. 21 at 18. In support of this argument, defendant cites to Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1171 (Fed. Cir. 1995). See id. In Highland-Falls, plaintiffs challenged the Department of Education's (DOE) method for allocating funds under the Impact Aid Act. Highland-Falls, 48 F.3d at 1171. The United States Court of Appeals for the Federal Circuit found, however, that the DOE's "approach was consistent with statutory requirements." Id. The case did not address FLSA claims, and found that the DOE's approach "harmonized the requirements of the Impact Aid Act and the [ADA]." See id. In the court's view, the Federal Circuit's decision in Highland-Falls does not alter the analysis in this case. The United States District Court for the District of Columbia's combined decision in National Treasury Employees Union v. Trump, Case No. 19-cv-50 and Hardy v. Trump, Case No. 19-cv-51, 444 F. Supp. 3d 108 (2020), discussed by defendant in one of its supplemental filings, see ECF No. 37, is likewise unhelpful. Although it involved facts that arose from the same 2018 lapse in appropriations, the decision focuses almost exclusively on an analysis of whether plaintiffs' claims were moot, rather than on the operation of the ADA.

[7] The parties both claim that the Supreme Court of the United States' decision in Maine Community Health, 140 S. Ct. 1308, supports their position in this case. See ECF No. 45, ECF No. 46. Maine Community Health does not address the FLSA, and only includes a limited discussion of the ADA. See Maine Cmty. Health, 140 S. Ct. at 1321-22. Accordingly, the decision does not dictate the outcome here. To the extent that the case informs the present discussion, however, it tends to support plaintiffs. In the opinion, the Supreme Court held that

584.  The court will, of course, consider the GEFTA amendment to the ADA as part of its analysis.

### 3.      Waiver of Sovereign Immunity

Before analyzing the sufficiency of plaintiffs' allegations, the court must address defendant's contention that plaintiffs' claims are barred by the doctrine of sovereign immunity.  In its motion to dismiss, defendant correctly notes that "'[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.'"  ECF No. 21 at 20 (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)).  And that waiver "'will be strictly construed, in terms of its scope, in favor of the sovereign.'"  Id.  (quoting Lane, 518 U.S. at 192).  Defendant concedes that the FLSA includes a waiver of sovereign immunity, but argues that the claims made by plaintiffs in this case fall outside the scope of that waiver.  See id. at 20-21; see also King v. United States, 112 Fed. Cl. 396, 399 (2013) (stating that "there is no question that sovereign immunity has been waived under the FLSA").

Defendant argues that the FLSA "does not require that employees be paid on their regularly scheduled pay date or make damages available when compensation is not received on a pay date."  ECF No. 21 at 21.  As a result, defendant contends, the scope of the FLSA's waiver of sovereign immunity does not extend to the category of claims alleging a FLSA violation because wages were not paid as scheduled, such as plaintiffs' claims in this case.  See id. at 20-23.  According to defendant, the GEFTA confirms its long-standing belief that the government's payment obligations under the FLSA are abrogated by a lack of appropriations:

> The [GEFTA] provides that "each excepted employee who is required to perform work during a  . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates."  Pub. L. No. 116-1, 133 Stat. 3.  Congress has thus spoken directly to the question of when compensation should be paid.  There can be no basis for inferring that compensation made in accordance with that explicit directive subjects the United States to liquidated damages.

Id. at 22-23.

---

"the [ADA] confirms that Congress can create obligations without contemporaneous funding sources," and concludes that "the plain terms of the [statute at issue] created an obligation neither contingent on nor limited by the availability of appropriations or other funds."  Id. at 1322, 1323.  Applied here, this conclusion suggests that the defendant can incur an obligation to pay plaintiffs pursuant to the normal operation of the FLSA even when funding is not available.

Defendant also asserts that the scope of its waiver of sovereign immunity for FLSA claims does not cover the claims asserted here. See ECF No. 26 at 14. It argues, without citation to any authority, that:

> a cause of action under the FLSA cannot per se accrue against the United States when federal agencies do not pay employees on their regularly scheduled paydays during a lapse in appropriations because a federal statute expressly provides for when and at what rate federal employees will be paid under those circumstances.

Id. at 14.

The court disagrees. The claims brought by plaintiffs in this case are straightforward FLSA minimum wage and overtime claims under the FLSA. See ECF No. 6 at 12-14. Because the FLSA does not specify when such claims arise, courts have interpreted the statute to include a requirement that employers make appropriate wage payments on the employee's next regularly scheduled payday. See Brooklyn Sav. Bank, 324 U.S. at 707; Biggs, 1 F.3d at 1540. Contrary to defendant's suggestion, the court is unpersuaded that this judicially-imposed timing requirement transforms ordinary FLSA claims into something analytically distinct, and beyond the scope of the statute's waiver of sovereign immunity.

Accordingly, the court finds that defendant has waived sovereign immunity as to plaintiffs' claims, as it has with all FLSA claims, and the court will review the sufficiency of plaintiffs' allegations as it would in any other FLSA case.

### 4. Plaintiffs State a Claim for FLSA Violations

As noted above, the FLSA requires that the government "pay to each of [its] employees" a minimum wage. 29 U.S.C. § 206(a). Pursuant to the FLSA, the government also must compensate employees for hours worked in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). And although the text of the statute does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday. See Brooklyn Sav. Bank, 324 U.S. at 707; Biggs, 1 F.3d at 1540.

In their complaint, plaintiffs allege that CBP "classified them as FLSA nonexempt," and that they "were designated excepted employees [under the ADA] for the shutdown that began on December 22[, 2018]." ECF No. 6 at 3, 6. Plaintiffs also allege that as a result of being classified as exempt employees, plaintiffs were required to work during the shutdown, but did not receive timely pay for that work. See id. at 6-8.

Defendant does not contest any of these allegations, and in fact, concedes that "plaintiffs [were] employees of agencies affected by the lapse in appropriations," and that "plaintiffs were paid at the earliest possible date after the lapse in appropriations ended." ECF No. 21 at 13, 14. Defendant also admits that "[p]laintiffs are federal employees who performed excepted work during the most recent lapse in appropriations." Id. at 17. In short, defendant does not claim that plaintiffs are not entitled to payment under the FLSA, but instead argues that it "fully complied with its statutory obligations to plaintiffs." Id. at 18.

The court finds that, presuming the facts as alleged in the complaint and drawing all reasonable inferences in their favor, plaintiffs have stated a claim for relief under the FLSA. See Cary, 552 F.3d at 1376 (citing Gould, 935 F.2d at 1274).

### 5. Liquidated Damages

Defendant insists that its failure to pay plaintiffs was a decision made in good faith, in light of the ADA. See ECF No. 26 at 15. It further urges the court to find that its good faith is so clear that the recovery of liquidated damages should be barred at this stage in the litigation. See id. at 14-17. But as the court held in Martin:

> [I]t would be inappropriate to determine, on motion to dismiss, whether the government had reasonable grounds and good faith. It may well be that the government can establish these defenses, but its opportunity to do so will come later on summary judgment or at trial. Moreover, even if the court were to decide that a liquidated damages award is warranted, additional factual determinations remain to be made as to which employees, if any, are entitled to recover, and damages, if any, to which those employees would be entitled.

Martin v. United States, 117 Fed. Cl. 611, 627 (2014). Accordingly, the court declines to rule at this time on the issue of whether defendant can establish a good faith defense against liability for liquidated damages in this case.

## IV. Conclusion

Accordingly, for the foregoing reasons:

(1) Defendant's motion to dismiss, ECF No. 21, is **DENIED**;

(2) On or before **February 8, 2021**, defendant is directed to **FILE** an **answer** or otherwise respond to plaintiffs' complaint; and

(3)  On or before **February 8, 2021**, the parties are directed to **CONFER** and **FILE** a **joint status report** informing the court of their positions on the consolidation of this case with any other matters before the court.

IT IS SO ORDERED.

                                                s/Patricia E. Campbell-Smith
                                                PATRICIA E. CAMPBELL-SMITH
                                                Judge